## ANNIE E. ERWIN, Administratrix, etc., Respondent, *v.* THE NEVERSINK STEAMBOAT COMPANY, Appellant.

*Duty of vessel when her signals are not answered — A vessel is not bound to have lookouts to watch for vessels approaching from the rear — When a verdict in an action for negligent killing will not be set aside as excessive.*

Where two steam vessels are sailing in the same direction, and the second one, which is going at more than double the speed of the first, has given the requisite signals to indicate her intention to pass the first, but has received no response thereto, it is the duty of those in charge of the second vessel to immediately repeat her signals and to provide against the possibility of a collision by slackening her speed and if necessary changing her course in some degree; and they are guilty of negligence if instead of so doing they assume that the silence of the first vessel is an acquiescence in the intention of the second, as indicated by the signals, and proceed accordingly.

Neither the statutes of the State, nor the rules of navigation nor the decisions of the courts require a vessel to keep a lookout, stationed for the purpose of discovering and avoiding vessels approaching from the rear and sailing in the same direction.

This action was brought to recover damages for the negligent killing of the plaintiff's intestate. The plaintiff, his mother, was aged, blind and helpless and largely dependent upon her son's earnings for her support. The son, an engineer, was industrious and faithful in his professional duties and in providing and caring for the plaintiff. The case has been tried three times. The first verdict was for $1,500, the second for $100 (set aside on the ground of the inadequacy of the damages) and the third for $5,000.

*Held,* that the last verdict would not be set aside as excessive.

Appeal from a judgment in favor of the plaintiff entered on the verdict of a jury, and from an order denying a motion for new trial made on the minutes of the justice before whom the action was tried.

The action was commenced in 1875 and has been tried three times. Upon the first trial the jury rendered a verdict for $1,500. Upon a new trial, ordered because of the admission of improper evidence, a verdict was rendered for $100, which was set aside on the ground of inadequacy of damages. Upon the last trial a verdict was rendered for $5,000.

*D. McMahon,* for the appellant.

*John M. Bowers,* for the respondent.

DAVIS, P. J.:

This action was brought to recover damages for an injury which caused the death of William E. Albertson, the plaintiff's intestate. Albertson was the engineer of the steam propeller Hope, and was killed by a collision near Hell Gate, between the Hope and the defendant's steamer Americus, by which the former was immediately overturned and sunk, and Albertson was drowned. Both vessels were running in the same direction towards the sound, the Hope being in advance, and in the slack-water near the shore, and the Americus rapidly coming up, to pass her, in the channel. The Americus was much the faster boat. The tide was ebbing at a rate between three and five miles an hour; the Americus was running from fifteen to eighteen miles an hour, and the Hope at about five miles an hour. At the point where the Hope struck the tide, she was suddenly diverted and thrown towards and partially across the channel, and at about the same moment was struck by the Americus with such force that she careened and sunk at once. Albertson was engaged at his duties in the engine room, and, being unable to escape, was drowned. The questions of fact in the case were presented to the jury by the learned judge in a charge of admirable fairness and clearness.

The only exception to the charge arose upon the requests of the defendant's counsel for a further charge on the subject of contributory negligence. The court declined to alter the charge as given, and the defendant's counsel excepted.

On that subject the court had charged as follows: "It is also necessary that you should be satisfied that the occurrence which led to the death of Albertson was not produced by the negligence or misconduct of the deceased. If it was, then the plaintiff cannot recover. It has been claimed by the learned counsel for the plaintiff, that the deceased was not chargeable with any negligence of the pilot of the Hope, if any such negligence occasioned the disaster, and I am asked to charge you that, although the pilot of the Hope may have been guilty of negligence in the management of the vessel on the occasion in question, his negligence will not prevent a recovery in this action against the defendant, if you find that the defendant was guilty of negligence. Now, gentlemen, I am of the opinion that the weight of authority in the State is otherwise, and that

under the evidence, the deceased and the pilot being engaged in a common employment in the management of the Hope, if she was negligently managed and handled on the occasion in question by the pilot, and such negligence led or contributed to the disaster and the death of the engineer, that then no recovery can be had."

The pilot of the Hope had the management and control of its navigation, and if under the evidence there were any negligence, it grew out of his conduct, and therefore the charge covered the whole ground, and was as favorable to the defendant as the law required. It was not the duty of the learned judge to repeat the charge and put it in another form of language as requested by the counsel, and it was no error to decline to do so. The exception was, therefore, not well taken.

We have examined with care each of the numerous exceptions taken in the course of the trial, and so far as they present any important question for consideration, we think they were correctly disposed of by the learned judge. It is not necessary to consider them *seriatim*. Some of them, which related to questions which might possibly be said to have been objectionable, called out immaterial answers, which cannot justly be said to have injuriously affected the defendant. Others of them, if the rulings were erroneous, were cured by the testimony called for by the questions being subsequently admitted without objection. We are unable to discover sufficient ground in those exceptions to justify us in interfering with the verdict.

The Hope being in advance, and going in the same general direction as the Americus, was by the established rules of navigation entitled to the right of way. The Americus was proceeding at more than double the speed of the Hope, and had, of course, the right to pass her; but in approaching to do so, she was bound to give certain prescribed signals indicating her intention to pass, and in what manner. The testimony as to whether she gave the requisite signals was in conflict, but we think the preponderating evidence established that she did give two signals with her steam whistle, indicating her intention to pass on the left, or channel side of the Hope. The Hope did not give, as the regulations required, an answering signal, by which the Americus would be informed that her own signal had been heard, and was

understood.   The pilot of the Hope testifies that he did not know the Americus was approaching him, and heard no signal from her.   His action accorded with his testimony, and the jury had the right to accept as true, that if the signals were given they were not heard and for that reason were not answered by the Hope.   But as we understand the rules of navigation put in evidence by the respective parties, and, as we suppose, a reasonable degree of care required at the hands of the Americus, it was her duty when she knew that the Hope made no response to her signals, not to have assumed that the silence of the Hope was an acquiescence in her intentions as indicated by the signals, but to have repeated them immediately, and to have adopted precautions against the possibility of collision by slackening her speed, and if necessary, changing her course in some degree, so that in passing she would not be brought within the distance of the Hope, forbidden by the rules of navigation and the statutes of this State.

She failed to do either of these things.   She neither slackened her speed, nor changed her course; nor did any act until the collision appeared to be imminent and unavoidable; and then according to the evidence her engine was stopped, but too late to be of any service in arresting the disaster.   The evidence tends strongly to show, and it is undoubtedly true that the collision would not have occurred if the Hope had not, on striking the tide, been suddenly thrown out partially or wholly across the line in which the Americus was running; and it is also probable that if the pilot of the Hope had known of the approach of the Americus or had heard her signals, he might with a great degree of care have prevented his vessel from being so far thrown out of its course by the tide and the collision would have been avoided.   But it was the duty of the officers of the Americus to have known that the Hope at that point was likely to be thrown into danger, and in view of that fact, to have taken the necessary precautions to avoid a collision.   The testimony certainly justified the jury in finding that the Americus was traveling recklessly, at a speed of eighteen miles an hour in immediate proximity to the Hope, and where a collision was imminent, without repeating her signals, and without taking any step that would be likely to avoid a possible collision or to prevent the serious consequences which followed.

It is insisted that the Hope was guilty of negligence in not having a lookout so situated as to discover the approach of the Americus and thus enable her to avoid the collision.

The law does not, as we understand it, require a lookout under such circumstances and for such a purpose. The Hope was of course bound to exercise a reasonable degree of care under the circumstances of the case, but neither the statutes of the States, nor the rules of navigation, nor the decisions of the courts have held that the degree of care requires a lookout stationed for the purpose of discovering and avoiding approaching vessels sailing in the same direction. The absence of that peculiar kind of protection is not, in itself, fatal to a recovery. The leading vessel under such circumstances is entitled to rely with confidence that approaching vessels intending to pass her will not fail to obey the requirements of the statutes and of the rules of navigation; and it can hardly be said that it is itself bound to the exercise of any higher degree of care than they impose. We think that the collision was found by the jury upon evidence justifying such finding, to have been caused by the neglect of the Americus to repeat her unanswered signals, and to take the precautions in respect of approaching and passing the Hope, which reasonable care and diligence imposed upon her, and for this reason we are of opinion that the verdict cannot be disturbed either upon any question of law or evidence.

This conclusion disposes both of the appeal from the judgment and from the order, so far as the latter depends upon questions as to the weight of evidence.

The other ground of the motion was that the damages were excessive. The case had been carried as the papers show to a third trial; and upon the last trial the damages given were much heavier than upon either of the others. That, in itself, is no reason for interfering with their amount. The plaintiff was the mother and next of kin of the deceased. The evidence shows that she was largely dependent upon his earnings for her support. She was aged, blind and helpless. The statute allows the jury in such cases, in the exercise of their discretion, to give an amount not exceeding $5,000. They had the right to take into consideration the condition of the mother, the care and attendance necessary for her comfort and happiness, and the probabilities that she would have

continued dependent upon the deceased for them, as well as for her maintenance. If the jury considered that $5,000 would be no more than sufficient to cover her probable pecuniary losses, and replace and secure to her the pecuniary benefits she would be likely to have received from a son shown to have been industrious and faithful in his professional duties as well as in his attention to and provision for her wants, we do not think it is within the province of the court to disturb their conclusion.

We are, therefore, of opinion that both the orders appealed from and the judgment must be affirmed.

BRADY and BARRETT, JJ., concurred.

Judgment and order affirmed.